IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

AMOS THAMES                                                                         PLAINTIFF

V.                                                    CIVIL ACTION NO. 1:17-CV-00084-NBB-DAS

FOCUS MANOR, INC., a Mississippi Corporation,
TALIAFARO, INC., a Tennessee Corporation,
JOYCE ROBERSON, GEORGE A. MILLER,
LAMONT WESTBROOK, and ANNIE CARTER,
Individually and in their official capacities                                    DEFENDANTS

MEMORANDUM OPINION

Presently before the court is Defendant George A. Miller's motion to dismiss for failure to state a claim. Upon due consideration of the motion, response and complaint, the court is ready to rule.

Factual and Procedural Background

Plaintiff Amos Thames has been a paraplegic and wheelchair bound since 2014. Consequently, Thames requires "around the clock" care and is totally dependent on the assistance of others. In the summer of 2015, Thames began searching for a place to live which would meet his needs, both physically and financially. During this search, Thames discovered a residential facility located in Louisville, Mississippi, owned by Defendant Focus Manor.

Thames alleges that Miller, Focus Manor's Executive Director, actively participated in the recruitment of Thames as a resident for the facility. Miller allegedly made certain representations to Thames regarding its relationship with the Department of Housing and Urban Development ("HUD"), touting the facility as HUD-approved and limited solely to residents with disabilities. Miller additionally assured Thames that his needs, i.e. for a daily caregiver, would be accommodated and that an on-site property manager—Defendant Joyce Roberson—would be available to assist Thames should an emergency arise.

Thames allegedly relied on Miller's representations when he entered into a HUD lease agreement with Focus Manor on August 28, 2015, to live at the Louisville facility. Thames resided at the facility without incident until February 16, 2016. On this date, Thames was at his apartment alone, fell from his wheelchair, and needed emergency assistance. Thames contacted Roberson but she allegedly refused either to help him herself or to call "911" for assistance.

Following this incident, Thames's sister called Miller to complain about Roberson, but Miller allegedly defended her inaction. Thames's sister followed up with a written complaint concerning the incident and sent a copy to Miller. Miller, however, failed to respond or otherwise take any remedial action. In April of 2016, Defendants, including Miller, allegedly held a "safety meeting" at the facility where they harassed Thames about the incident and the complaints he had filed.

On June 3, 2016, Thames received written notification that he was in violation of the lease agreement because he had an "unauthorized occupant" residing in his apartment. The letter advised Thames that the "unauthorized occupant" must vacate the premises or he would be evicted. Thames alleges that the "unauthorized occupant" referenced in the letter was his daily caregiver. According to Thames, Defendants knew that he would have a daily caregiver staying with him at the facility and never indicated that it was a problem until this letter was sent.

Notwithstanding this letter, Defendants met with Thames on June 10, 2016, regarding his re-evaluation for the HUD lease. During this meeting, Defendants did not mention the letter nor did they raise the unauthorized occupant issue. Instead, Defendants re-certified Thames's HUD lease agreement for another year from August 2016 through July 2017.

Soon after, on August 2, 2016, Roberson contacted local law enforcement and made a report regarding potential drug activity at Thames's apartment. Law enforcement subsequently obtained a warrant and searched Thames' residence, but no drugs were found and Thames was not arrested.

Thames alleges that Defendants conspired together to make this false report so as to harass and embarrass him.

Three days later, on August 5, 2016, Defendants filed an eviction action against Thames in the Winston County Justice Court. Defendants, however, failed to provide Thames with the requisite written notice to terminate the lease prior to filing the action. Then, on August 22, 2016, Thames received a hand-delivered letter from Defendants demanding that he vacate the premises by September 23, 2016, and charging Thames with three separate lease violations. Thames contends this letter marked the first time Defendants had made him aware of such charges.

Despite this letter, the justice court entered an order dismissing the eviction action on September 28, 2016. Consequently, Thames continued to reside at the Focus Manor facility and, during this time, he alleges that Defendants continued to harass him in an incredibly hostile manner. Thames alleges that Defendants did so with the intent to make him vacate the premises on his own.

On January 25, 2017, Defendants sent Thames a "Notification of Termination of Lease Thirty (30) Day Notice" in which they advised that termination of his lease would be effective on March 1, 2017. Defendants then accused Thames of two new lease violations, both of which allegedly occurred in the spring of 2016. At this point, Thames had "had enough" of Defendants' attempts to harass and embarrass him. Thus, Thames decided he would no longer oppose Defendants' efforts to evict him and would vacate the premises.

Thames subsequently filed the instant suit against Defendants on June 1, 2017, asserting numerous causes of action including discrimination in violation of the Fair Housing Amendments Act ("FHHA"), 42 U.S.C. § 3601 et seq., discrimination in violation of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 701 et seq., breach of contract, misrepresentation, abuse of process, intentional and negligent infliction of emotional distress, and various other tort claims.

Defendant Miller, in his individual capacity, now moves to dismiss for failure to state a claim upon which relief can be granted.

## Standard of Review

A complaint must contain a "short and plain statement . . . showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). For a plaintiff to survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 67 (2009). A motion to dismiss for failure to state a claim tests both the legal and factual sufficiency of a plaintiff's complaint. *Id.* at 679. A plaintiff's complaint must "nudge his claims . . . across the line from conceivable to plausible." *Id.* at 680.

To meet her burden, a plaintiff must demonstrate that the facts pleaded allow the court "to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). At this stage, the court must accept "as true" all allegations in the complaint, except for those which are mere conclusions. *Ashcroft*, at 678. Moreover, the court views all well-pleaded facts in the light most favorable to the plaintiff. *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004). Further, motions to dismiss are "viewed with disfavor and [are] rarely granted." *Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 497 (5th Cir. 2000).

## Analysis

In moving to dismiss, Miller argues that Thames has failed to state a claim against him because he was "at all times acting as an agent and representative of corporate Defendant Focus Manor," and that "all of his alleged actions were, therefore, the actions of Focus Manor." Thus, Miller contends, only Focus Manor may be held liable for his alleged wrongful actions.

Under Mississippi law, it is well-settled that a corporation, such as Focus Manor, is "an entity separate and distinct from its stockholders." *Childers v. Beaver Dam Plantation, Inc.*, 360 F. Supp. 331, 335 (N.D. Miss. 1973) (citing *Piggot v. Texaco, Inc.*, 358 F.2d 723 (5th Cir. 1966); *Illinois Central R. Co. v. Mississippi Cotton Seed Products Co.*, 166 Miss. 579 (1933)). Thus, officers or directors of a corporation, like Miller, "cannot be held responsible for the torts of the corporation." *Id.* (citing *Grapico Bottling Co. v. Ennis*, 140 Miss. 502 (1925)).

However, it is also well-established that "[w]hen a corporate officer participates in or authorizes the commission of a tort, *even on behalf of the corporation*, he may be held personally liable." *Hardy v. Brock*, 826 So.2d 71, 74 (Miss. 2002) (quoting *Turner v. Wilson*, 620 So.2d 545, 548 (Miss. 1993) (emphasis added)); *see also Mississippi Printing Co., Inc. v. Maris, West & Baker, Inc.*, 492 So.2d 977 (Miss. 1986). Such liability "may not be predicated merely on their connection to the corporation but must have as their foundation individual wrongdoing." *Id.* Further, it must be shown that the officer was "the guiding spirit behind the wrongful conduct or the central figure in the challenged corporate activity." *Turner*, 620 So.2d at 548.

Moreover, with respect to Thames's discrimination claims, "courts . . . have routinely imposed individual liability for discriminatory actions under the FHA." *Chavez v. Aber*, 122 F. Supp. 3d 581, 593 (W.D. Tex. 2015)(citing *Fair House. Res. Ctr., Inc. v. DJM's 4 Reasons Ltd.*, 499 F. App'x 414, 416 (6th Cir. 2012)). Courts do so because FHA actions are "essentially action[s] in tort," in which general principals of agency law apply. *Dillon v. AFBIC Development Corp.*, 597 F.2d 556, 562 (5th Cir. 1979). Consequently, "an agent who does an act otherwise a tort is not relieved from liability by the fact that he acted at the command of . . . or on account of the principal," but, instead, "is himself liable as a joint tortfeasor." *Id.* (citing Restatement (Second) of Agency § 411 (1958)).

Upon due consideration of the foregoing authority, the court finds Miller's arguments for dismissal to be without merit. In his complaint, Thames alleges that Miller actively participated in his recruitment; made certain representations to Thames to entice him to sign a lease with Focus Manor; actively defended the alleged wrongful actions of Defendant Roberson and failed to take any remedial action; conspired with the other defendants to harass and embarrass Thames; and played a part in Defendants' attempts to evict and terminate Thames's HUD lease without good cause.

In sum, in viewing the allegations of the complaint as true and in the light most favorable to Thames, as the court is required to do at this stage, the court finds that Thames has sufficiently stated a claim(s) against Miller in his individual capacity. The court lastly notes that Miller makes several arguments regarding Thames's alleged failure to provide "any evidence" to support his claims. Miller, however, seems to confuse the standard for Rule 12(b)(6) motions with that of summary judgment motions. It is well-settled that courts may *not* "go outside the complaint" and consider evidence when deciding a Rule 12(b)(6) motion to dismiss. *Rodriguez v. Rutter*, 310 F. App'x 623, 626 (5th Cir. 2009). Accordingly, Miller's arguments to the contrary are without merit.

## Conclusion

For the foregoing reasons, the court finds that Miller's motion to dismiss for failure to state a claim is not well-taken and should be denied. A separate order in accord with this opinion shall issue this day.

This, the 5th day of June, 2018

/s/ Neal Biggers
**NEAL B. BIGGERS, JR.**
**UNITED STATES DISTRICT JUDGE**